Good morning, your honors. May it please the court. My name is Rihanna Hidalgo, law student here on behalf of petitioner Elmer Giovanni Roja Lopez. I will address the Convention Against Torture claim for five minutes and my colleague, Miss Miller, will address the asylum claim for seven. And we'd like to reserve three minutes for rebuttal. Thank you, your honor. Mr. Roja Lopez is only alive today because through luck, he escaped a kidnapping that was meant to end in his death. This was only after Mr. Roja Lopez was specifically targeted by gang members in El Salvador, tracked across several locations as he tried to flee, and then ultimately kidnapped by corrupt police officers who hand delivered him to gang members to be killed. So that credible threat of death is at the core of his hat claim. And it shows that he is more likely than not to suffer future torture. The agency's denial of relief was wrong for three key reasons. First, its relocation finding was not supported by substantial evidence. Second, the agency misconstrued the state action requirement. And finally, the agency failed to understand that because these actors intend to kill Mr. Roja Lopez, there's no question as to whether the future harm would rise to the level of torture. And in analyzing past torture, it also did not consider the imminent threat of death. Turning to engage with the most relevant evidence in the record on this point, which is that Mr. Roja Lopez himself has already tried to relocate three separate times and each time the gang was easily able to find him. One of those relocations was two to three hours away. And as Mr. Roja Lopez testified, the problem is the country is very small, gangs are everywhere, and they communicate between the neighborhoods. And that statement is also supported by the country conditions evidence. The agency instead relied solely on inferences about Mr. Roja Lopez's family members. But those family members circumstances would only be relevant if they were similarly situated to him and they are not. They don't share the characteristics that placed his life in danger and that they did not witness a gang murder and they were not believed to have reported it. And those family members never became gang targets. There's no indication that the gang ever intended to track or follow or pursue these family members if they were to move. Only that gang members continue to return to essentially Mr. Roja Lopez's last known location. The pattern is where Mr Roja Lopez goes, the gang follows. So taking a step back, so let me let me ask you about that. And I hear your point about the fact that the gang doesn't seem to be after the family members. They're after Mr. Roja Lopez. But the reason that the gang was looking for the family members was to find Boca Lopez. So when the family members moved, there's not evidence that the gang continued to follow him. How is that not support the agency's conclusion that since they're looking for Boca Lopez and the way they were able to find him most of times was through his family members. If they aren't continuing to pursue his family members in order to find them, then it would seem like that's some evidence that they are not that they if they can't find the family members when they move, they wouldn't be able to find him when they move because precisely because the reason that they're looking for the family members is because they're looking for Boca Lopez. Sure, Your Honor. So so to clarify, I think what's really important in the facts here is that family members never received contact from gang members until Mr Rojo Lopez moved in with them. So the evidence is that the gang members were on the lookout for Mr Rojo Lopez. So there's every reason to believe if Mr Rojo Lopez were to go move back in with these family members or show his face in these towns that gangs would start knocking on their doors again. Is it their testimony in the record that they continued to when he left the family member? Didn't the family members testify that the gangs were still coming around looking for him at their at their houses or at their locations? And so but then what the agency said was, yeah, but then when the family members move, there's no evidence that they continue to be contacted. So I understand that there they are. They're going after the family members because they're hoping the family members will lead them to Rojo Lopez. But if the family members move and they don't go after the family members anymore, then that would seem to be some support for what the agency for the agency's conclusion precisely because they're going after the family members because Rojo Lopez. Your Honor, the difference there is that the family members received contact from gangs when they remained in Mr Rojo Lopez's last known location. But continuing to return to those homes to contact the family members is far different than an intent to track or follow those family members. So again, it's not that the gang has more than established its ability to find Mr Rojo Lopez. It found him three separate times. So if the family members don't hear from gangs after moving, it's because the gang members are tracking them. Well, that's how they found him in the first place, right? He was I mean, other than the time that he got stopped by the brother of the of the gang member who's a police officer. The other times they found him by finding him through his family members. That's where they were going to find him. So I mean, I try to pretend like I'm a gang for a second. I would keep if I was trying to find him, I would keep on trying to find him at family members house. So that would mean I was still searching for the family members. So I think the key difference to address your question is that, for example, Mr Rojo Lopez has other family members in El Salvador. Those family members never received contact from gangs. It's not as if this game was going around looking for his brothers or sisters or cousins to find out where he was. It was when he showed his face in these areas that gang members got wind. He was there and then went to the home where they found out he was staying to contact them. So there's an important difference in how the gang was looking at the uncle and the sister and Mr Rojo Lopez himself. So you're not you're saying that you don't think the record reflects that they found him through his family members. You think they found him and and then sort of track him down. Uh, and it just so happened that, you know, instead of staying at a motel six, he was staying at a he was staying in a family member's house. That's that's your view of the evidence. Well, I can only speculate as how they how they determined where his home was. But I think the evidence is very clear that the games able to find Mr Rojo Lopez and that the gang follows where Mr Rojo Lopez goes again. It would be a family members in El Salvador with whom he didn't stay, received contact. So the intent, this campaign of following and tracking Mr Rojo Lopez again is far different than simply returning, returning to these homes. And the sister's testimony, the sister's testimony is that they continue to return to the home to look for Mr Rojo Lopez. So they they showed an interest in him after he left. Uh, and given that he they found him three separate times, and then the family members moved. If we assume that they didn't hear from him, it's because they're they're different. The gang is not treating them the same way as Mr Rojo Lopez. And if I may, I'd like to reserve the remainder of my time for rebuttal. If there are no further questions on cats, that's fine. Good morning, Your Honors. I'm Kelsey Miller. And may it please the court. Mr. Rojo Lopez is also eligible for asylum protection here because he hears persecution on account of his membership in a particular social group. That particular social group is men in El Salvador who are not gang members, but who are persecuted on the belief that they reported gang crime. At a minimum, legal errors require a remand here. The issue of social distinction is reviewed in NoVo. I'd like- Can I- I'm a little confused by- Judge Corman, did you have a question? I did, but you have- You go ahead. You go ahead. I was just going to ask you what, what was the motivation? It seems to me they were motivated, not because of his membership in a particular group, but they were motivated by the fact that he had, he had betrayed one of their trades, a member of some other gang. They couldn't have cared less. So what was the, what was, I'm just trying to understand, what was the motivation? Was it his membership? Unless you consider this gang a group. It just seems to me that what, what, what I'm troubled by is that they were simply motivated by and they weren't going after everybody, whoever, whoever betrayed a member of any group. Your Honor, Mr. Rojo Lopez was persecuted because he's believed to have reported the gang crime, which poses a direct threat- Of this gang. Sorry? Of this gang. Yes, of this gang. But they're not in the business, this gang is, is not out to vindicate or, you know, go after everybody who ever testifies or they were believed to have testified or provided evidence against members of other gangs. It's just, it's just this group of people who've committed crimes. They think he, he, he snitched on them and they want to seek revenge. Is that, is that a particular social group? Your Honor, it is because record evidence shows that in the country of El Salvador, snitches are considered social pariahs. And so they're set apart from society in distinct ways and they're persecuted in distinct ways. So why are they considered social pariahs? Why? So, so beginning with the country conditions evidence, the State Department details how those suspected of being gang informants are persecuted and witnesses are targeted and killed and that it's a principal human rights concern in the country of El Salvador. So they're social pariahs precisely because they get persecuted. They get persecuted by, by these gangs. So I, my question is kind of similar to what Judge Corman was asking because he's, he's focusing on, doesn't this just seem like retribution and, and or sort of just trying not to get caught, right? Like if somebody sees that you did something, try not to get caught. But isn't there also a problem that the PSD that you're proposing is, is completely, it's completely based on persecution, right? If they are social pariahs here, then they're social pariahs because people, because they get persecuted by, it's not, it's not like, it's not like society just thought, man, snitches are bad. I don't like the fact that they sound like, like your little brother, you know, that tells on you. It's that, it's that they are, that they are, if they are, if they have social visibility, to use the language of, then isn't the social visibility precisely because if you snitch, you are going to get attacked by a gang. And in that case, isn't it being, isn't your social group being defined by the persecution, which we know you can't have one, it's defined only by persecution. Your Honor, a few points on that. And so first, with respect to Judge Corman's question, I'd like to make clear here that just as my colleague Ms. Hidalgo suggested, the participation of the government in Mr. Rojo Lopez's persecution distinguishes this from a case of personal, personal vendetta. It's it's not right to characterize this case as merely a case of somebody being mad that somebody snitched on them and involved them in some judicial or criminal process. What matters here is that there's, there's this state action and although that's not required for the asylum context, it is important to keep in mind that this sets us apart from sort of a personal motivation. Second, with your, with your question on, on circularity, this court held in Diaz- Reynoso v. Barr that the idea, the inclusion of persecution is a sort of poison pill that dooms any group, does not withstand scrutiny. So persecution is allowed to be part of an articulated particular social group so long as it is not the only basis for the particular social group. And here we have several factors outside of the fact of persecution that are central to the definition of the articulated social group. So for example, we have men in El Salvador who are not gang members, who are believed to have reported gang crime, and all of those factors are outside of the context of persecution. And, you know, this court held in Diaz-Reynoso v. Barr that it's illogical to expect a belief on the membership, a basis of membership in a- Counsel, let me, I hear what you're saying there, but, but if the only reason that something has social visibility, if the only reason that it qualifies as a group, and this is, which we have, that's up to the agency to determine in the first sentence, right? Does it, if the only reason it qualifies as a group is because those people are persecuted, so for instance, isn't that a problem? So for instance, you know, shoplifters here, here in the United States, you know, is, are shoplifters a group, a persecuted group or not? Will it be, I don't know that they're actually considered to be a social group in and of themselves here in the United States, because they don't, they don't, people don't, the gangs don't seek retribution against them, right? So it seems to me, if that is the only reason it has social visibility, that seems to be a problem. Your Honor, this court held in Pereer-Bach v. Holder that the persecutor's perspective is properly considered, not as dispositive, but as probative, where the act of persecution is the catalyst that causes social distinction more broadly, and that's exactly what's happening here. You're right that it's the persecutor and the gangs' persecution of Mr. Rojo Lopez in the first instance that really calls, calls the group into question and, and sets them apart in a significant way, but then after that initial catalyst act, the record evidence in this case shows that his group is set apart and that society more broadly, beyond just the persecutor, just the gang here, perceives snitches as social pariahs. So for example, in Mr. Rojo Lopez's own testimony in the record at 96, Mr. Rojo Lopez explains that when he was on the run and fearing for his life and seeking safe harbor with his uncle, he didn't disclose his status as a perceived snitch to his uncle, because he was so afraid that his uncle wouldn't, wouldn't lend him safe harbor. And so country conditions evidence really shows, in addition to Mr. Rojo Lopez's own credible testimony, that snitches in Salvadoran society are social pariahs. People try to avoid associating with them, and further that the group is defined with particularity. People clearly know the outer bounds of the group and concertedly try to avoid crossing that run out of time. I'm a little, I'm a little surprised because several times I've heard when you've articulated the PST, you've added in there the piece that that they did not report, but they are perceived to have reported. And I thought your argument was that that was an error here by the IJ and the BIA to, to, to view this group as, as the, the smaller group of people who are perceived to have reported but didn't report, as opposed to what I would assume would be a larger group, which is the imputed, which is, in other words, we don't, we don't look at whether or not they are actually, we treat them as if they did report. And is that how we should look at this? Is that how the, the agency should have looked at this? That, that's correct, your honor. So under prayer box, the holder imputed membership in a particular social group is just as good under the law as actual membership in a particular social group. And to be clear, our articulation of the PSG is men in El Salvador who are not gang members, but are persecuted on the belief that they reported gang crimes. So our position is that people believed to have reported gang crimes could be either people who actually did report those gang crimes or people who are just believed to have reported those crimes. So it's the honor. If there are no further questions on asylum, I'd like to reserve remaining time for rebuttal. Good morning. May it please the court. My name is Greg Kelch and I represent the United States Attorney General. I'd like to begin with a particular social group issue. And by doing so, I'd like to remind the court that although the petition was represented by counsel before the agency, at the conclusion of his merits hearing, the immigration judge specifically warned the petitioners and his counsel that they had not submitted evidence to demonstrate that the proposed particular social group was cognizable. And that continues to be the case in this petition. The only evidence that we have of the particular social group is men who are non-gang members in El Salvador who witnessed gang crimes and are persecuted by such gang members for the belief that they reported the crimes. And I understand that on appeal, he's also arguing that it should be an imputed membership of people who witnessed gang crimes and reported them. Even if that were an exhausted particular social group, there just is not record evidence to demonstrate that people who report crimes or people who are believed to have reported crimes are a socially distinct and particularized group. Is that an exhausted, the imputed PSG? Is that an exhausted PSG or not? We say that it is not, Your Honor. What's the difference between the two that you just articulated though? Well, there are two groups. One is a group of people who are wrongly believed to have done something. And one is a group of people who have done something. He's imputed. There's no allegation here that he went to the police. It's the argument is that he's imputed to be part of the group of informers or snitches that went to the police. He's imputed to be a member of that, of such a group. Correct, Your Honor. But it seems to be the same way as the way you just articulated it. Well, Your Honor, we say that they are separate issues. And if you look at the arguments that he made before the agency, he did not argue for imputed membership in some group of people who have reported crimes, but he was part of a group of membership, a group of people who are believed to have done something. And it might be the reason. Explain to me the difference. Well, Your Honor, in matter of CA, the BIA held that people who are confidential informers lack the social distinction to be a particular social group. So had he and his counsel gone to immigration court and said they are imputed to believe confidential report informers, or that would be what the report would be. Let me ask you this. Can there be an imputed argument for a particular social group? Yes, Your Honor. Yes. Just as we recognize an imputed, for example, imputed political opinion. Correct? Correct, Your Honor. And that same principle applies here, isn't that right? Yes, Your Honor. However, all of his argument is, is just it's an imputed membership. Your Honor, he had an opportunity to make his argument before the immigration judge and the BIA, and he did not say imputed membership. He said membership in a group of people who are believed. However, even if this is an exhausted issue, still we come down to people who have reported crimes, there is no record evidence of them being a socially distinct and particularized group. And, you know, with respect, we read the record differently than petitioners counsel. When the petitioner testified was asked, why did you not report this to the police? Why did you not assist them? He didn't say it was because all of his friends and his family would look down on him for doing so. He said it was because he was afraid of retribution. He was afraid that he would be harmed for doing so. And while that is unfortunate, and we do recognize that, that he is not a member of a cognizable particular social group, as is required for asylum eligibility. So we would respectfully ask that the court deny that aspect of this petition for a review. But that seems, that's an argument that he's not a member of the group. What you're saying is that he had to have reported it. Pardon me, Your Honor, let me be more clear, that he does not belong to a cognizable particular social group, not that he isn't a member of a group. Excuse me if I misspoke. But your argument here is this group is just legally not cognizable. Correct. Is that correct? Correct. And the basis for that argument is what, again? Your Honor, the determination of cognizability is based on a case-by-case basis on record evidence. He has not submitted evidence on this, in this record, that people who have reported crimes or are believed to have reported crimes are a socially distinct and particularized group in El Salvador. So why does he fail, why does this proposed group fail the particularity requirement? You know, defining the boundaries of the group. Well, there are a couple problems. One is the question of what does it mean to report? His testimony was that he is a snitch. And what is that? Is that somebody who files a formal police report and signs his name on it and makes it public? Is that somebody who speaks to a police officer in a confidential fashion to say what he knows? It is somebody who answers a police officer's question, like, did you see so and so run past here? So that is an issue of reporting. What does it mean to report? And that is one of the, one of the standards that he has to meet. And moreover, there's also the social distinction issue. It's not clear on this record that people in El Salvador view people who report as being some kind of socially distinct group. And there certainly isn't any evidence that law-abiding people in El Salvador look down on those who have cooperated with law enforcement. Well, you know, they sort of acknowledge that they weighed their argument, but there was an embedded in their brief, there's an argument that there's a law in El Salvador that protects people who report crimes and testify on behalf of the prosecution and whatnot. I recognize that, Your Honor. The problem is that... And they seem to acknowledge that particular law in what was the case, I forget the name of it. One of our cases. Enrique Rivas, Your Honor. Yes, Enrique Rivas, that's right. Enrique Rivas, though, is distinguishable because in that case, the court was dealing with another aspect of El Salvador's special witness protection law. That had to do, Enrique Rivas, had to do with people who go to court and testify. Yes, but there seems to be a suggestion that that law is broader than just that, protecting people who testify. And, Your Honor, that is evidence that would have had to have been presented to the agency. Understood. We can't fault the BIA for not considering arguments and evidence that were presented before that. I understand your argument, Vince, because the petitioners seem to have, they said in a 28-J letter recently on that issue, on that law. Yes, Your Honor. And so with that, we believe that because this particular social group argument is not supported by the record, the court should deny this aspect, that aspect of the petition for review. That brings us to the issue of cat protection. And, Your Honor, cat protection cases- Can I ask you a quick question before you go on? Yes, Judge Corman. I believe we have similar laws in this country that protect people who cooperate with the police, who testify. And interfering with that is called obstruction of justice or endeavoring to enforce that. Does that make them a protected group in the United States, a recognized protected group, because it's in the public interest to encourage people and protect people who cooperate with the government? I suspect that it does not. One of the things I try to do here, Your Honor, though, is not to get ahead of the agency. This argument and this evidence hasn't been presented to the BIA, and it's not my place to make decisions on asylum applications before the agency has ruled. My suspicion is that this evidence standing alone is not going to change the BIA's decision and find that he is a member of a cognizable particular social group. But beyond that, I wouldn't want to say much more on evidence that the agency hasn't considered. And so with that, we come to the cap protection issue. And the point I want to make is that these cap protection cases are difficult because they have a much higher standard than asylum. The issue here is not whether there is a well-founded fear of future persecution, but whether it's a probability. So the agency has to look in its crystal ball and get a sense of what's going to happen in the future. What is probable? What is the kind of harm? And is that harm going to rise to the extreme level that is torture? And what we think is significant, most significant about this case, is that the record implicates the possibility of internal relocation. The petitioner had run-ins with the gang when he stayed with his sister and with his sister and his uncle in San Marcos. Those individuals both submitted affidavits and stated that when they moved to Coyo Pango, El Salvador, and San Luis Talpa, El Salvador, gang members no longer came to their house looking for the petitioner. And that's probative about whether they are going to look for him if he moves to other areas of El Salvador. And again, this case largely comes down to the standard of review. The petitioner, who was represented by counsel, he had the burden to demonstrate by a clear probability that if he returns to El Salvador, he would be tortured. But here, this is a shooting that he observed in September of 2013. He did not, in fact, cooperate with the police in any way. Those individuals who did the shooting, he testified that they were released by the police because the police did not have any evidence against them. Those several years have gone by. Family members were able to avoid gangs by moving to other areas of El Salvador. It was a reasonable conclusion. That evidence is substantial evidence to support the agency's conclusion that he failed to demonstrate eligibility for cat protection. And in your view, that's conclusive. And that's the end of the discussion. Your Honor, the standard of review is for substantial evidence. No, no. The standard of review about substantial evidence, whether he's likely to face pers- likely to be located and face persecution. But is it, is it the beginning and the end of the discussion is conclusive on the issue of relocation that, that, um, what you've just argued? Oh, I think I understand your question, Your Honor. The agency views all of the evidence together, uh, all of the totality. So you're correct. It's not, it's not a switch. Uh, internal relocation is one factor of many, but when we combine the amount of time that's gone by, the fact that internal relocation does seem to be a possibility, those factors and the agency's conclusion that although what the experience was indeed severe and unfortunate, it didn't quite rise to the That supports the agency's conclusion that he did not demonstrate eligibility for cap protection. I was just going to ask, is it your, your position that he didn't show that he suffered past torture? Is that the government's position? It is, Your Honor. Um, and as I always say, it's, it's a grisly business trying to figure out whether somebody's harm rises to the extreme level that is torture. And we, we look at cases that have come before the courts before. No case is perfect. No case has all of the elements of the next case, but generally we're looking at an incident that happened over the course of two days. He was beaten by two people, beaten on his face and then around the ribs. We do recognize that harm. He was threatened with death. The BIA in its decision, they discussed the harm that he had suffered. They cited the relevant portions of the trial transcript and they cited cases of people who have been harmed and threatened with death, and we believe we stand on the arguments that's made in our brief that, that the agency correctly determined that what he experienced, although it is unfortunate, it doesn't rise to that level of torture. Let me ask you this, it seemed for a moment that we were to find some air on the asylum matter and send that back for further work. If you were able to show past persecution, doesn't relocation have to be re-examined? For both torture and for asylum? If you are to, and we tried to make this point in a footnote of my brief, and pardon me if it wasn't clear, pardon me if that wasn't clear enough. If the court finds that he belongs to a cognizable particular social group for asylum purposes, that implicates past persecution. And if he's found to have past persecution, there's a rebuttable presumption of future persecution. So the case needs to go back to the agency for it to do that analysis. Can that also sort of slide over into the relocation for torture as well, cat-reeling? I don't think it would, Your Honor, because the burdens of proof look differently. For asylum purposes, if he had past persecution on account of a protected ground, then DHS has the burden of proof to demonstrate that he could avoid harm by relocating elsewhere in El Salvador. But for cat protection purposes, he has the burden of proof. How could you have, would it be proper to have a situation where the government doesn't meet its burden on asylum, but then when you get to cat, you say, well, he can relocate. Well, Your Honor, I mean, that's a very, that's a good point and a very confusing one that you raised. And we would say that if you believe that this is a cognizable particular social group and there needs to be a remand, the best course of action is to remand it to the agency and to let them work that out in the first instance. And then if he doesn't receive it. He's on constinction, then go back. Well, if the court finds that he belongs to a cognizable particular social group, then yes, we would agree that the case needs to go back for further analysis. Well, you can, you can see whether you want to argue about whether it relates to the, it rises to the level of torture. You can see that it was persecuted. There was past persecution. And so, as I said before, Judge Corbin, I, I try to be careful not to get, get ahead of my agency because they specifically avoided answering the question of persecution, but I, I will say here today that if you find that there is a cognizable particular social group, this evidence does implicate past persecution and you should definitely send it back for them to look at issue. Or without, without treading on your client, you will agree that there's a distinction between past persecution and torture and that you have to show less past persecution than torture. Yes, Your Honor, I do. It's a lower standard. And so if there are no further questions of the court, I will conclude and ask that the court deny this petition for review. Thank you. I want to make sure Judge Corbin didn't have a follow-up question there. Well, I don't, I don't want to go over. I mean, it seems to me that what they did to him was pretty terrible. It wasn't just, it was, they put a gun to his head. They beat him repeatedly with a rifle. They placed a gun against his head and put the gun inside his mouth. They fired shots next to his head. After discussing whether to kill him, they decided to take him to gang members as a He was delivered to gang members. They tied him up, blindfolded him. While he was blindfolded, the gang members repeatedly beat him and discussed who was going to kill him. They kicked him in the ribs, beat his face and repeatedly held a knife to his mouth. And this lasted for about three hours. Blindfolded and bleeding from his nose, he was left to wait for another gang member to arrive so that the gang could decide who would ultimately kill him. And he ultimately, he thought he was going to die. Um, that's pretty strong stuff. I mean, I think you, you acknowledge that, you know, prior cases, each case is different and you know, unless you get a case that's identical, I don't know how binding the prior cases. And to a certain extent, this is, this becomes a kind of a subject of standard in addition to being exposed part object with part subject. I mean, how could you say that this and, and, and, and, and the mental effect of this outrageous conduct does not fit within that description. I respect your, I respect your concerns, your honor. And we stand on the arguments that are made in the brief. And we think that moving forward, we think what is most significant is that the evidence overall suggests that he could relocate elsewhere in El Salvador and not face harm. And that's because they didn't, they didn't go back to his family to look for him. That is correct, your honor. And with that, we would ask that we would respectfully request that the court should deny the petition for review. All right. So we'll now hear the rebuttal from the petitioner. And how do you begin this? Judge, they're both out of time. They can each have a, they can each have a two minutes. Okay. Your honor, I'm going to briefly address a few points on asylum, and then I'm going to turn it over to my colleague to address a few points on CAP. First, this case is on all fours with this court's en banc decision and Enrique's either by testifying in court or by otherwise coming to the attention of cartel members. There are cartel members, here gang members. Here, Mr. Rojal Lopez undoubtedly otherwise came to the attention of cartel members or gang members in this case. The government cited that what it meant to report is unclear. But I would posit that if reporting a gang crime to the police doesn't fit within Enrique's, Revis's definition of otherwise coming to the attention of gang members, then I don't know what does. And precedent makes- I mean, that's the one problem with that case is then the BIA went back and decided that it wasn't based on the persecutor's perspective. It should be based upon society's perspective. And I think in subsequent case law, we've said that we need to defer to that. So that's the- I mean, I think the case you're citing still has some force in our court as far as precedent, but the part you're citing it for, the part that it turns on whether or not they happen to have come to the attention of the gang is the weakest part of that case. Because again, as you go back to what I said earlier, you're sort of basically saying, well, if they're going to be persecuted, they're necessarily a PSG. But that's not what that case stands for. And to the extent that there was any part of that case that stood for that, it's been sort of subsequent case law has deferred more to the BIA. We look to the society. We don't look to the- just to the gang. Sure, I see that I'm running up against time. May I just answer your- Just answer that question. So this court can then look to the post-Enrique's, Revis case law in Conde Cabedo v. Barr. Their petitioner was denied relief, but the court in that case expressly said that if there were evidence that in a specific country, people in the community knew who reported crimes to the police, or if there were laws protecting those who did, the proposed group potentially could be cognizable. That's exactly what's happening here. Record evidence shows that people in El Salvador know that snitches are social pariahs, and there's in fact a special witness protection law protecting those who do. And if there are no further questions on the asylum point, I'd like to turn it over to my colleague, Lizzy Dalga. Go ahead. Thank you, Your Honors. I'll just briefly address past torture and relocation. So the biggest difference here between the past torture cases cited by the government and the agency and our case is that here, these captors intended to kill Mr. Rojal Lopez. So here to focus on the absence of more severe physical injuries is to hold against him that he was able to escape murder. And that is error. This court held an acquiescent that where an applicant flees to avoid torture, it can hardly be said that that negates the likelihood of future torture. We still maintain that this did rise to the level of past torture for many of the facts that Judge Foreman pointed out, putting the gun in his mouth, holding it against his head. The agency didn't address any of that. As far as relocation goes, we know what happens to Mr. Rojal Lopez when he relocates. The gang told Mr. Rojal Lopez that it would find him wherever he went and that it would kill him. They told the same thing to his family members, and then they found him three separate times. So and the other thing I want to point out is that it is an inference about other individual circumstances that the agency relied on here. They didn't elaborate on what happened to them after we relocate. So it's an assumption that they haven't heard from gang members since relocating. And that does not constitute substantial evidence on this record. Thank you, Your Honors. Okay. Thank you. We appreciate your arguments this morning. And we thank the clinic at Berkeley for participating in our pro bono program. We appreciate it. Thank you. And we appreciate all the arguments, including the argument from the government as well. So and with that, we will submit the case for decision. Thank you.
judges: Paez, Korman, Vandyke